Thank you and may it please the court. David Holler on behalf of the United States. The government submits that aggravated assault in violation of Arizona law qualifies as a crime of violence under Sentencing Guidelines Section 2L1.2. This case requires the courts to determine the generic definition of aggravated assault under the framework set out by the Supreme Court in Taylor. The United States submits that this definition should be an assault that either causes serious bodily injury or involves use of a dangerous instrument. The defendant does not disagree with these particular requirements. However, he argues that a mens rea of at least depraved heart recklessness or extreme indifference recklessness is required. And second, he also argues that a greater degree of injury is required than that that is required under the Arizona statute at issue in Mr. Esparza-Herrera's case. The government disagrees with these particular arguments. On the first position, we do not believe that any mens rea greater than recklessness is required under the generic definition of aggravated assault. Let me ask you a question about that. Maybe under like a common sense Fifth Circuit view, we could say nothing more is required. But don't we have precedent that in this case requires us to look at whether the majority of jurisdictions would require more than recklessness? Because if the majority of jurisdictions require this sort of recklessness with some indifference to human life, do we need to say that's present in order to say it's an aggravated felony? Well, I think under this Court's precedent, that is the requirement that this particular Court has set up. But, of course, I think that that begs the question, which is what the Fifth Circuit found in Mangia Portillo, which is there's not a significant difference between recklessness and extreme indifference recklessness. That's the finding that the Fifth Circuit made. I don't think the Fifth Circuit disagrees that you have to. You don't think their analytical framework is different from the Ninth Circuit's? I can describe it as a common sense approach, and I'm not sure what the alternative would be, the law professor's approach of the Ninth Circuit, perhaps. Well, I guess the Ninth Circuit, yeah, maybe in some instances this Court has undertaken a more searching inquiry than the Fifth Circuit or than other courts of appeals have. But I don't think, looking through the Fifth Circuit's case laws I have, I don't believe that the Fifth Circuit doesn't just look at a statute and stop there. And there are certainly other instances where the Fifth Circuit has. But we do, don't we? I mean, we wrestle with these issues all the time in immigration and criminal cases, and we've had God knows how many in-bank cases called on questions of classifications of crimes. But we really spend a lot of time looking at the elements under the Taylor categorical approach and assessing it against the quote-unquote generic crime, which usually means the model penal code definition, in trying to decide whether the statute that we're being asked to interpret is broader or narrower or fits within the generic definition. And that does seem to be, rightly or wrongly, a different approach from the more practical common-sense approach of the Fifth Circuit. Mr. Howard, let me, I tend to agree with Judge Thomas. Just so you can focus your argument as you think best. Absolutely. I would say that I personally kind of like the Fifth Circuit's approach. And, you know, maybe I would write a separate opinion saying that. But as a three-judge panel, we have to follow the Ninth Circuit's approach. So we have to, it seems to me today, that we have to affirm and should affirm the district court based on the Ninth Circuit's precedents because as a three-judge panel, we can't overrule those precedents. And maybe a different result could be reached in bank or via the Supreme Court. But unless you can explain to me how we could reverse based on Ninth Circuit precedent, that I'm sort of in a place where I'd say, well, we should affirm and bemoan that we can't use common sense. I understand that, Your Honor. Let me at least make my pitch as to why. I think you're taught, it is a sympathetic audience. And I think that the result here is, I mean, it's ridiculous. But it's the Ninth Circuit. And that we do have to deal with Rodriguez-Guzman. And, you know, so I think you do have to, you know, I mean, to help out your argument, I suppose. I mean, how many jurisdictions within your proposed generic definition of aggravated assault, which would appear to only require ordinary recklessness plus either one, use of a deadly weapon or two, serious bodily injury. How many do you count? Well, Your Honor, in my initial count that's in my initial brief, I submitted that there were 29 states. If you agree that only recklessness is required, that there's not a significant difference, as the Fifth Circuit has stated, that there's not a significant difference. If you take out the extreme indifference recklessness states, I believe in my brief there were something like 10 or 11 of those. So we would then drop to about 18. And I fully recognize the prior precedence in Rodriguez-Guzman, which is that if you take out those states, I'm in full agreement with you, Your Honor, that I'm probably going to have a losing argument here in this Court. So is the Solicitor General going to do anything about this? If we write the case. That's not my decision, Your Honor. You have a voice in it. I mean, you have to make a recommendation. Right. And, of course, we in the criminal division do feel that to the extent that the courts are diverging, and in many ways the fact that the Ninth Circuit – I mean, I guess if I could just step back a moment, Your Honor. The Ninth Circuit – I don't think that the Court in Taylor contemplated the kind of searching inquiries that the Ninth Circuit to a greater degree, but all the courts of appeals are having to make in regards to crime of violence determinations. And certainly the Sentencing Commission itself is studying, based on recommendations from the Department of Justice, possible changes at least to the sentencing guidelines provisions, maybe not to – that obviously doesn't deal with the immigration context or with the Armed Career Criminal Act. The problem goes back to Taylor, and my question about the Solicitor General is not facetious. I mean, essentially the Department at some point is going to have to go back to the Supreme Court and say, you need to clarify what you said in Taylor when you talked about a categorical approach. What does that mean? Absolutely. If here's what the lower courts are doing with it, is that what you intended? Well, and, you know, in Duenas-Alvarez, we did try to go up to the Supreme Court, and we did get some precedent that I believe is helpful to the question. There's a great line in Duenas-Alvarez that we all love to quote when, you know, about not getting too hypothetical with some of our possibilities. The problem you've got with the statute, though, is that you don't have to get hypothetical at all. The statute says what it says. Well, the statute does say what it says, and so then the question is – and again, harkening back to Your Honor's question, though, I know that we normally go to the model penal code and say that's the source. But what the court said in Taylor is not we always go to the model penal code. They said we look at what the generic definition is as Congress would have understood it. And in this particular case, if you read the commentaries to the model penal code, if you read Section 211 and also Section 210, the model penal code invented the definition of this extreme or depraved form of recklessness. That's something that's made up that had nothing in the common law. And there are only 10 or 11 states that have adopted that formulation and that determination. As I understand the intent of the legislation, it is to avoid tagging someone with a felony aggravated assault conviction for what amounts to accidental or reckless behavior in a civil sense. There's a fine line there between reckless conduct that steps over into the criminal arena, and the states, I think, have included these words, you know, manifest indifference to human life as a way to explain that it has to be more than simple recklessness. And the problem with the Arizona statute is it doesn't adopt that modifying language. That's true, Your Honor. But what I would submit is that most states don't have such distinctions and such differences. I mean, one could come back to this Court a month from now and say it's not even extreme indifference recklessness, because only 10 or 11 states have adopted that particular definition. And by this specific count, all of these other states do this. And you can keep cabining and cabining and cabining, and eventually you find that there's a generic definition of aggravated assault, and not one of the 50 states meets that definition. And it's impossible to believe that that's what Congress intended. And to whatever extent, whether this panel rules for me or whatever, you know,  that is going to encompass some broad range of states. To the extent that one gets to the point where no state statute ever meets the generic definition, and the only way that we ever get there is by interpreting plea agreement transcripts or plea agreement documents, it's clear that that's not the route that the courts have intended. And so it's like under the Ninth Circuit's precedent, it would be a generic assault if it was either done intentionally or with recklessness heightened by this kind of, you know, indifference to life. But, you know, I guess I'm back where I was at the start. I'm sympathetic to the government's position. Maybe I'll write a little essay saying we should do something different. But as far as this case decision goes, I think Mr. Monahan is, you know, in a pretty good seat given the Ninth Circuit's precedent. Well, I guess the only other point I would like to make, Your Honor, is that I don't think that this Court has ---- again, looking at Taylor and looking even at Rodriguez-Guzman in those cases, the inquiry that is being made in those cases is a little more straightforward than the one that the district court undertook and that the defendant is asking you to undertake here. And that is, for example, in Taylor, is it a building, is it a structure? That's something that I think everyone is undisputed is generically involved in the common law definition. It's something that you can look at from a trial transcript or that you can look at from a plea hearing transcript and easily determine, or it's just not going to show up at all. But here, I mean, I think the problem causes, not just here under the definition of the categorical approach, but when one goes to the modified categorical approach, it would seem that what you're asking the district courts to do or you on appeal to do is to then read through a trial transcript and read through that to make some sort of determination as to whether this defendant engaged in extremely indifferent, reckless conduct. If we had a transcript here where the defendant admitted, I did this act, they're not going to admit, it's not going to be like Taylor, I robbed a building, I robbed a structure. This is a plea case. Well, but the analysis applies equally, and Taylor itself was a trial case. In terms of modified categorical. But you conceded we can't do the modified here. There is nothing. We can't. There wasn't anything, so we didn't submit anything. But it certainly sounds like the facts in the case would, I mean, they're bad facts. Well, they are bad facts, Your Honor.  Well, I mean, this was an aggravated beating here. Right. But if all we had was the defendant admitted the facts in the complaint are true, this woman got brutally and savagely beaten, he's not going to admit in most cases, in most plea hearings, having participated in them, he's not going to admit a specific mens rea that he was involved in. The court is just going to say, I find from the facts that you've met the definition of the crime. Well, I understand your frustration, and truly, I don't think your frustration could even probably nearly as great as ours. I mean, in terms of you have my heart, but not my mind. And that if we could go on bond, but if you look at, I mean, if you even look at some of the things, I mean, the dissent that Ilan joined in Fernandez-Ruiz, I mean, if you look at sort of where the votes are, I mean, I have to agree with Judge Tallman. I mean, the Supreme Court's just got to straighten this out, because the common sense approach, I think, makes great sense. But if we do that, I'm telling you, that's an en banc call waiting to happen, and it's going to be a loser in this court. Well, let me just ask you to clarify one. You're way over your time, so to that, we'll let Mr. Monahan have some time to defend the Ninth Circuit's precedent. But here's the point. Like, is it absolutely clear, as you see it, that if this particular case, this Arizona statute, was in the Fifth Circuit, would the Fifth Circuit's common sense approach say that this statute is a crime of violence? In other words, is there any distinction between the statute in Arizona and the somewhat similar statute that they approved? Well, Your Honor, the – I mean, I guess there's a two-part – to begin with, there's a two-part answer to that question. On the general issue that we've raised on the question of recklessness, the Fifth Circuit has, in an unpublished decision that we cited to Peraza-Chicas, applied this to the Arizona statute. The published opinion in Mangia Portillo is to the Tennessee statute, but they have unpublished decisions applying it to the very similar Texas and Arizona statutes. And one could, you know, go through Westlaw and see if Peraza-Chicas applied to other cases. So there is no doubt that the Fifth Circuit believes that the generic aggravated assault statute encompasses recklessness and that the Arizona aggravated assault statute is a crime of violence. Now, there is the secondary question that Mr. Monahan has raised about, you know, the extent of the injury. Temporary injury versus prior. Okay. But putting that issue to the side, though, yes, the Court in the Fifth Circuit has and does – has on appeal said, yes, recklessness under Texas, Tennessee, Arizona, and the other states that are – where the statute is basically identical to Arizona. And I think those five or six states does apply that all the time. I mean, there was a period, I believe it was last year, where these cases were coming up all the time, and they've died down presumably because the issue is now settled in the district courts throughout the Fifth Circuit in cases involving Texas and Arizona statutes are applying it. So there is no doubt that, you know, if this Court is to rule, as I sense it is, in favor of the defendant, there will be a marked difference in the guideline range. And also, of course, because these statutes are applied in other contexts in the criminal context and immigration context. I would like an excellent memorandum to this solicitor. Given the discretionary sentencing, then why couldn't – would the district court have been able to just give the higher sentence even though he follows the Your Honor, I don't – I assume he could. This Court has not done a ton of post-Gall and Kimbrough case law in that area of judges giving above-range sentences. The district court judge, you know, Judge Windmill here did give the maximum of the guideline range, which I think shows some indication that – of where he came down and wrestled with on this particular issue. It's a 16-level enhancement, is it not? That's true, Your Honor. And it would have – the difference would have been the 21- to 27-month range versus, I believe, 70 months approximately would have been the minimum of the range. So it would have tripled his sentence. I mean, I suppose after Kimbrough, a district court judge could say, in this particular context, I recognize that this is not a crime of violence under this Court's precedent, but I looked at this statute and I just believe that this man committed heinous conduct and I'm going to reject that. But I don't know how this Court would come out on that. The only thing I saw that would justify that kind of a decision are the two categories of the presentation report, which are pretty aggravating in terms of the conduct that the defendant previously engaged in. But if you concede under the modified categorical approach that a district court would not be able to reach the same conclusion that the probation officer reached in the pre-sentence report, how would the district court articulate sufficient grounds to justify a sentence that's three times higher? I don't know if he could, Your Honor. That's what I said. But all I'm saying is that just as a district court judge could say, I disagree with the sentencing guidelines determination that crack cocaine should be punished more severely than powder cocaine, it seems to me that a district court judge logically could say, I disagree with the sentencing guidelines determination that the generic definition of aggravated assault should be this heightened, and that based on my own review of the documents. I mean, under Shepard, there would be some tension there, but I don't know, in light of the more recent precedent of Gall and Kimbrough, I think there's some possibility that the court could do that. In Gall and Kimbrough, the district court has some leeway to make factual decisions based on evidence that the district court can consider, let's say, like the pre-sentence report, even though it might be hearsay, which we can't consider in a modified categorical approach because the Supreme Court has sort of limited what you can consider on that. You can consider what the guy pleaded to or what he said, but we can't just consider like some other. Well, let's get to Mr. Monahan.  Thank you, Your Honor. Thank you very much. Thank you, Mr. Pollack. Good morning. May it please the Court, Counsel, while I may have the Court's mind, I would hope to try to persuade the Court and win the Court's heart on this issue. I do believe that even under the Fifth Circuit's approach, a commonsensical approach, that the distinction that we're talking about today, the extreme indifference that is found in the majority of state codes, the model penal code, it has served as the basis for allowing an individual to be put to death under Tyson v. Arizona. This is not, Your Honors, with respect, a minor distinction. The full weight of authority shows that the courts and the legislatures have routinely concluded that extreme indifference to the value of human life can be equated with intentional conduct. In comparison, in Fernandez-Ruiz, this circuit said, ordinary recklessness is accidental. It is not purposeful. And so while whether or not we use the Ninth Circuit approach, I still think there is a strong argument that the Fifth Circuit simply got it wrong even under its own methodology. But if we look at the fact that Congress specifically enumerated aggravated assault as one of the categories of a classic crime of violence, and if we look at the conduct, and I guess it's a modified, modified categorical approach, looking at more than what we're allowed to look at, as to what your client did to warrant his conviction in Arizona, isn't he the poster child for tagging with a crime of violence? I mean, this is a pretty aggravated assault, a four-hour imprisonment, a brutal beating, hospitalizing the victim. No argument. It don't get much worse than that, short of killing her. And I realize... Stay with our mind. Stay with our mind. You're risking our hearts. It's a happy day. Back to that, yes. No, I appreciate the Court's position. I understand that. And what I can tell the Court is that those facts were not contested in terms of the pre-sentence report. However, if we didn't have the analysis that we have under Rodriguez-Guzman, there might have been a different approach. But I can tell the Court that Judge Windmill routinely conducts a very thorough 3553 analysis, and he decided that a 27-month sentence was a reasonable sentence and had to take into account those facts, which were undisputed and in front of him for his honor to decide. And that's what caused him to go. But if he can't get past the tailored categorical approach under Ninth Circuit case law, then he really can't get to the modified categorical approach, and he can't really consider the facts, can he? That's basically what our case law teaches. Well, I think he can still. He can't consider his guideline calculation, but he could consider those facts in just making a sentencing determination. I think that's right. I don't disagree with that. I think this Court has set forth the procedure, and the Supreme Court actually followed it in Kimbrough and Gall, as I recall, that you first have to do the guideline analysis, but then it opens up. And, in fact, I think the statute 3661 says that sentencing the district court can consider anything, basically. It's a very expansive consideration, and Judge Wynn-Mill has gone above and below as district judges frequently do. Come on in. I'll tell you what. I'm going to rule to affirm here based on our press, but you can help me out with my contrary essay. Like, who could clarify that the Arizona statute should be considered aggravated assault? Is that Congress or the Sentencing Commission? In other words, right now we have this language in the sentencing guidelines. Could the Sentencing Commission give an opinion, saying that should include any kind of recklessness that causes serious damage or injury? Or would it have to be Congress? I think the Sentencing Commission could do that, Your Honor. I think just as they enumerated aggravated assault but neglected to provide a definition of what that means, leaving it to the courts to do that, they could come in and say aggravated assault means an assault that has at a minimum extreme indifference to the value of human life or ordinary recklessness. And then I think that would take it out of the court's realm. Could Congress clarify it? I guess they could have. Or have they sort of irrevocably given this stuff to the Sentencing Commission? You know, I don't want to misspeak. I think the Sentencing Commission could make that ruling, but I also think Congress could direct the Sentencing Commission through legislation. Okay. And maybe that's what it will. Well, I appreciate it. We haven't used up all your time, and, you know, you're free to use it. And if either of my colleagues are thinking of a concern that they wouldn't follow the Ninth Circuit precedent, you should definitely argue to them. Well, I certainly don't want to talk, Your Honors, out of the position that you're indicating, but the one thing I would want to respond to from the government is the notion that the model penal code invented this, whereas in common law it didn't exist, the extreme indifference. And I think if you look at Taylor, Taylor was dealing with burglary, which is obviously a common law crime. But Taylor didn't just say we look to, you know, the law in the 1600s to decide what burglary means, because if you do that, burglary had to be committed at night, for example. You have to look, and Taylor and Gonzalez v. Joanis Alvarez both looked at the ‑‑ I looked just yesterday, they have an appendix with, like, 50 state codes listed at the end of the decision. So they did look at the state codes themselves in Taylor and in Joanis Alvarez. And so I don't think the fact that the model penal code created or ‑‑ what I'm saying is I think that's a distinction without a difference. I think the bottom line is the methodology that the Supreme Court has followed and that this circuit has followed, we do have to look at the trend in the states. And I think my survey was a little different than Judge Windmill's, but I think his honor was accurate in saying that the majority of states do require this extreme indifference, which is a huge distinction. Again, it's the difference between murder and manslaughter. Thank you. Thank you very much, sir. Okay, well, I think that probably covers it in U.S. as far as where I shall be submitting. We really do appreciate Mr. Holler coming all the way from Washington, D.C., Mr. Monaghan coming from Boise, and both did a very nice job arguing. And we'll see what we can write that will keep everyone interested. Thank you. Mr. Monaghan, would you give my regards to Mr. Rubin when you get back? I sure will. Thank you. Thank you.
judges: Gould, Tallman, Callahan